# LEONARD v. PENNSYLVANIA R. CO.

District Court, S. D. New York.
Jan. 6, 1936.

Bernstein, Weiss & Tomson, of New York City (Michael C. Bernstein, of New York City, of counsel), for plaintiff.

Platt, Taylor & Walker, of New York City (Roswell May, of New York City, of counsel), for defendant.

GALSTON, District Judge.

Now I shall pass on these motions. I find the critical allegation of the complaint in paragraph seventh, wherein it is alleged that the shipment was negligently and carelessly handled and improperly cared for; the cars and equipment furnished for the transportation thereof were defective, unclean, and inadequate for said shipment; such shipment was negligently controlled by defendant and/or participating carriers in course of their transit and at destination, and as a result of such improper and wrongful action the shipment arrived at destination in a decayed and deteriorated condition and was otherwise damaged thereby, causing a loss to the plaintiff herein.

Now, the ultimate question is whether plaintiff has sustained that allegation. The proof shows that all of those shipments went forward under a bill of lading that bore the indorsement "S L and C," the effect of which was to obligate the shipper to load the cars and the consignee to unload.

The critical proof in the case is in respect to the method of loading. Apparently there were two methods open to the shipper. He could have loaded in bulk or he could have loaded in crates or other containers. Having elected to load in bulk, he must stand the consequences of that election.

The most persuasive proof in the case, to my mind, is that which was offered by Mr. Riley and testimony corroborated by the defendant's witnesses, both of whom testified that from 90 to 95 per cent. of carload shipments coming in that way showed shift. The defendant is not responsible for the election. The shipper took what was to him the more economical way of having his goods transported. He sought a market at a distant point, over a thousand miles away, with the knowledge that these goods were likely to shift, as they did and as they had, and as practically all such shipments do. He must bear the consequences of his election. When these goods arrived at Manhattan Produce Yards, over a thousand miles away, they showed some shift; some melons were bruised.

That is the plaintiff's case. How does the defendant meet it, if, indeed, the defendant has to meet it at all? By establishing that the cars had a normal movement, free from collision, free from wreck, and at most that minor shop repairs were made in two or three instances.

I think, therefore, the testimony is conclusive that the plaintiff has failed to substantiate his causes of action, because he has failed to show negligence and has failed to show failure to carry out the contract that he entered into, as evidenced by the bill of lading bearing the limitations to which I have referred.

 It must not be lost sight of that the plaintiff's own conduct indicates almost, and I will say to me conclusively, that he could not reasonably have expected his carloads to go through without shift and without consequent injury or damage. The evidence shows that he had about 131 cars, during that season of 1931, of watermelon shipments in carload lots and he has made a claim for every one 'of them. And who is responsible? The railroad did all that it was reasonably called upon to do when it transported these shipments in freight cars following a normal and orderly process of transportation. That is the obligation of the railroad company under this form of bill of lading, to transport the cargo and to do it without negligent act. I see no proof of negligence.

 Now, the case for the plaintiff is not very much better if liability could be predicated on any act of the defendant, because I cannot assent to the proposition that a shipper of watermelons can prove his damage in the manner which this proof in the case indicates. Here is the plaintiff who says that he opens the doors of the car and sees some evidence of shifting, some evidence of bruised melons, and he follows his custom of selling at auction and he gets a certain price. How does he measure his damage? He says that other shipments brought higher prices, but we have no specific evidence of that, we don't know the conditions of such sale; his own measure of damage varies from that of his agent, the Traffic Service Association. And when the check is made by the railroad company, what do you find? A damage or loss in most cases within 2 per cent.; and when one has in mind the testimony in respect to the normal traffic and the normal consequences of damage, I can't see that even if liability existed that there is any proof of anything other than nominal damages.

In consequence, I shall grant the motion for a verdict for the defendant, and accordingly I do direct the rendition of such a verdict. I think that covers it.